The next case for argument this morning is in the matter of Trinity 83 Development. Mr. Moody. Yes, honorable members of the Seventh Court of Appeals, may it please the court. My name is Michael Moody, I represent the appellant Trinity 83 Development Corps. This is an appeal from an order of the district court, which affirmed an order of the bankruptcy court, granting summary judgment in favor of a mortgage lender in this case, in respect to the claims regarding the signed release that was filed by that lender in the case prior to the bankruptcy filing. It was the position of Trinity that that release was effective, that it should have been enforced, and filed a cross motion for summary judgment in that regard, in the bankruptcy court as well. And at this time, we believe that, again, as we state in our brief, the Motors liquidation case, which has been decided by the Second Circuit Court of Appeals, is very instructive here in this case. What we're being told here, what we're hearing from the other side here, is that there was some type of mistake, that there was some type of error, that this should not have occurred. Well, this type of situation, almost exactly this type of situation, occurred in the Enright Motors bankruptcy case in the Second Circuit. In that case, a bank filed a release of certain security with respect to its claims. It recorded that release, it prepared that release, it signed that release. In that case, it was a UCC3 termination statement. In this case, it was just, our case, it was just a regular release. Now, the bankruptcy court in that case said, yes, there was an error, and that they didn't mean, and that should somehow alleviate the effect of the release, which was perfectly clear. That court said, absolutely not. You signed the document. You signed the release. You filed the release. You prepared the release. You signed the release. And because of that, in that case, potential claims of over a billion dollars were at risk because the security interest had been released. There's two big differences, aren't there? First, we're dealing with Illinois law, and second, the releases that you're talking about in the, I don't remember the name of it, the J.P. Morgan case in the Second Circuit.  All that happened after the bankruptcy petition was filed. Here, you have the satisfaction and the cancellation both occurring before any bankruptcy petition. Your Honor, I don't believe that's correct. I believe that they were both discovered after the bankruptcy case. In the J.P. Morgan, General Motors case, the Unsecured Creditors Committee determined during their investigation that this release had been filed. Here, the same thing happened. After the bankruptcy court, after the bankruptcy filing, during the course of the bankruptcy case, it was determined that dissatisfaction had been filed. So the fact that in both cases, neither party knew. And the cancellation here. I'm sorry? And the cancellation was filed here. Correct. Both before the bankruptcy. Right. So you want to focus on the satisfaction part of it, right? But what about the cancellation part of it? Well, the satisfaction and cancellation are the same thing. They canceled a right. They waived a right to have a security interest in assets of this debtor. And filed a UCC-3 termination statement. Here, it's the same exact thing. They, under the contract, under the mortgage, under the note that they drafted and that they negotiated, they had the right to do that. They had the right to file the satisfaction of judgment. Or the satisfaction of claim. And that's what they did. Now, unbeknownst to the debtor, that was filed. And unbeknownst to the debtor, subsequent actions were taken to try to remedy that situation, which is not similar to what happened, obviously, in General Motors. In General Motors, what the lender tried to say was, it's a mistake. We're sorry. We didn't mean it. And the court said, doesn't matter. But that's because it was under the UCC. It didn't permit the defensive mistake. But as Judge Scudder is pointing out, we're dealing with Illinois law here, which does. A matter of the contract. Defensive mistake under Illinois law, though, requires certain findings and certain evidence regarding mistake, which, even if that's true, we don't think was the case here. But again, Your Honor, going back to the General Motors case, Illinois law doesn't say that contracts should be interpreted based on the four corners of the documents. And in fact, this court has said on numerous occasions, and the Empro case being most significant in that regard, we can't go around trying to look at extrinsic evidence and outside evidence regarding mistakes or prejudice, or what the lender argues in this case is that we could just go back and try to fix it because we were prejudiced by it. That's not how contract interpretation works. That's opening contract interpretation to chaos. That's opening contract interpretation to looking beyond the four corners of the document. You have a second issue here, don't you? And that is, one of the things that you point out in your brief, and it strikes me as candidly so, is that the reason that your client cares about this so much is that if you prevailed, you get the proceeds back. You get the proceeds back, that would allow the company to restructure. Absolutely, Judge. Okay, now, by its terms, then, aren't you seeking to redistribute the proceeds of the sale? Correct. And then how do you deal with 363M? Well, 363M, Judge, and this is the issue regarding mootness in the motions of this case, we are not trying to overturn or reverse the sale under 363M. But River West says that it applies to trying to redistribute the proceeds of the sale as well, rather than just getting at the sale itself. As well, but under the facts of that case, Judge, because those facts were so much different than this case. You had multiple lenders. You had individuals, not the debtor, trying to claim that they had an undisclosed or undetermined interest in the property. I understand that the facts of the case were different, but it was interpreting the language of 363M as being broader than just aimed at undoing the sale. Yes, because under the facts of that case, the undoing of the sale would have had such, I don't want to say catastrophic, but certainly such incredible results you would have had to have, and again, you would have had to have affected the third-party sale. In other words, the emphasis of that court, in my mind, and in that opinion, was to protect the third-party buyer, the bona fide buyer. Don't drag him into this, because he didn't do anything wrong. See, that's not what the case is here. The sale went through. We were fine with the sale. As a matter of fact, we agreed to the sale. It was a good way to try to mitigate damages and try to get this case resolved. Why didn't you seek a stay? Right. You were complicit. You set this in motion. It seems to me it's almost like a waiver situation. You could have sought a stay. Why didn't you seek a stay? You sought authorization for the sale yourself. Again, correct, Judge, and a stay involves posting bond, involves a lot of expense that, frankly, the debtor just didn't have and couldn't raise. This was a single-asset real estate case, Judge. It was only one asset, and one asset was the real estate, and that's what was being sold. It was valuable. It was sold for almost the entire amount of the debt. So the proceeds, again, we're not trying to affect the sale. That's why we didn't object. We could have, unfortunately, posting bond, and we would have had to come up with a couple million dollars to post bond to stop that sale, to stay that sale under Section 363, and this debtor was not capable of doing that. Can you just focus for a second on the language of 363M? Okay? And not talking about the facts of River West, but based upon the language of 363M. I mean, how can you satisfy that? Again, Judge, I apologize. I don't have 363M in front of me. So what it says is that reversal or modification on appeal, which is effectively what you're asking for, that's the way I read it, does not affect the validity of the sale to an entity that purchased or leased such property in good faith. And I expect that Cole Finn is going to stand up and say, well, that's us. That's correct. Well, that is the... I mean, we'll see. But it's as to the third-party purchaser, Your Honor. Again, 363M is to protect good faith purchasers of assets under 363 who have gone through the process, gone through the courts, gone through the notice process, done everything they're supposed to do, and bought the asset. Here, this is a creditor. This is a claimant. The bank is a claimant in this bankruptcy case, who now we believe we have a claim against for $2 million based on this sale. We're not trying to upset the sale. We're not trying to undo the sale. We're not trying to punish the bona fide purchaser in any way, shape, or form. I think that's what 363M is trying to protect. You might be right. I do think that you're probably right about the purpose of 363M, but its language doesn't limit it in that respect. It doesn't say it's only statutorily moot if it's the bona fide purchaser who's objecting. I could see an argument that 363M applies only to the validity of the sale itself and not to the distribution of the proceeds of the sale, but it seems to me that Riverwest precludes that interpretation. But I think the opposite. I think Riverwest explains why our interpretation of 363M is correct because it emphasizes the fact that that provision is there to protect the third-party bona fide purchaser, not the lender. It's not a get-out-of-jail-free card for someone who has done something with respect to that property that can later be a claim that was recoverable in a bankruptcy case like it is here. We're just making a claim against the bank for $2 million for taking proceeds of a sale it potentially wasn't entitled to receive because it had already released its claim. So I don't think 363M, and especially Riverwest interpreting it, defeats our argument. I think it supports our argument here because we're not trying to upset the sale. We're trying to protect the provision of the bankruptcy or protect the estate of the bankruptcy and potentially recover money from a claimant of the bankruptcy. Your Honors, I believe I'm beyond my time here unless anybody has any questions. Doesn't look like it. Thank you. Ms. Newman. May I please support? I am Lauren Newman, and I represent Colfin Midwest Funding. There are several differences between the General Motors case and our situation. First of all, the release was made in error, and an important part of that is the factual record is unrefuted and unrebutted. The debtor, Trinity, never filed a counter-affidavit. So our affidavit stands, which says the satisfaction was recorded by mistake and error. They continue to make their payments to the lender, and we continue to accept the payments. When this mistake and error was discovered, we re-recorded our mortgage by recording the cancellation. This happened way before the bankruptcy proceedings. This is an important distinction between our case and the General Motors case. That's an important fact in bankruptcy because we were perfected prior to the filing of the bankruptcy. So we went into the bankruptcy perfected. Also, under Illinois law, the way to satisfy a mortgage between a mortgagor and a mortgagee is to actually pay it and satisfy it. I know it's old case law, but there's a reason for it. And this court, in other cases, has recognized that once you grant a mortgage, the only way to satisfy that mortgage is to actually pay that mortgage. They never filed a counter-affidavit saying, We paid it. This is just a gotcha.  Then we corrected it. Now, in General Motors, when the UCC termination statement was recorded, they never undid it prior to the bankruptcy filing. So we have a big factual distinction, and JPMorgan Chase would have been in a different situation. But we re-perfected prior to the bankruptcy. So we were good. My lender was good going into the bankruptcy filing. Now, once we went into the bankruptcy case, we all agreed that the assets should be sold pursuant to 363 of the bankruptcy code. The debtor actually filed the motion. We agreed to the motion, and we sold to a third-party purchaser. 363M says that if they were unhappy with any aspect of the sale, not just who the sale went to or who the purchaser was. Where do you get any aspect of the sale out of 363M? 363M says the validity of the sale cannot be affected. Well, the sale order has language saying that the proceeds are to go to our client. That's fine, but you're relying on 363M and not the sale order. It's very easy to see how the sales validity can be sustained, but a lender who got the net proceeds can be ordered to turn them over to somebody else. They are distinct questions. Well, I think that it falls under the umbrella of the sale because River West says that you also can't reorder the proceeds of the sale. That's exactly what the claimant argued. Is there anything in the statute that says that?  I worry about imputing this, and you can't say anything about the proceeds to River West. We have several decisions saying the opposite, that 363M does not prevent a bankruptcy court or district court from reallocating the proceeds. All it does is protect the buyer's reliance interests. And if so, we've got a conflict within the circuit, and we need to clean that up, presumably by relying on the text of the statute. But if they were unhappy with that, they should have filed a notice of appeal, and they should have requested a stay, and that did not happen here. Do you think they waived any objection to this? I do, Your Honor, especially because of the language in the sale order. The sale order directed that the proceeds were to go to Colfin Midwest Funding as the secured lender, and by that language in the order, that order became final under the bankruptcy rules within 14 days. And the entire order needed to be appealed and stayed, and by not addressing that and just focusing on this release and satisfaction issue, I think they waived their rights. Have you ever asserted that they waived their rights as opposed to relying on 363-M? I did in my brief. And the way this was the criminal... It seemed to me like that was wrapped up in your 363-M argument. Yes, in our mootness argument. Right, because waiver and mootness would be different, right? Right. But I think the substance of this appeal is mostly that we were a perfected senior lender going into this bankruptcy. It was clear that we went into the bankruptcy case as the senior lender, and they really have no right to the proceeds going into the... when we went into the sale. Thank you. Thank you, counsel. The case is taken under advisement.